ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED HARRISBURG
JUL 3 0 2001
MARY E. D'ANDREA
Per _____ DEPUTY CLERK

| | |
|---|---|
| PAUL ROBERSON, | : |
|     Petitioner | :    No. 1:CV-01-1235 |
| | : |
|     v. | :    (Judge Rambo) |
| | : |
| IMMIGRATION & NATURALIZATION SERVICE, | : |
|     Respondent | : |

### RESPONSE TO HABEAS CORPUS PETITION

This is a habeas petition brought under 28 U.S.C. §2241 by Paul Roberson, a citizen of Haiti. Roberson was charged by the Immigration and Naturalization Service ("INS") as being removable for having been convicted of assault in the second degree. An Immigration Judge found Roberson removable, which decision presently is on appeal to the Board of Immigration Appeals ("BIA").

Presently, Roberson is being detained by the INS during his deportation appeal because, as a convicted aggravated felon, the Immigration and Naturalization Act, 8 U.S.C. §1226(c), requires his detention pending resolution of the removal proceedings. In a July 2, 2001 habeas petition, Roberson alleges that §1226(c) is unconstitutional. To the contrary, giving deference to Congress' plenary powers governing all aspects of deportation proceedings, the detention provisions of §1226(c) clearly meet a rational basis test and are constitutional.

## Statement of the Case

Roberson is a citizen of Haiti. In 1988, Roberson entered the United States.

On August 11, 1999, Roberson entered a plea of guilty to assault in the second degree in Kings County, New York. Exh. 1 (New York City Department of Probation Pre-Sentence Investigation Form), and received a 2 year sentence. Exh. 2 (Sentence and Order of Commitment Form).

On May 8, 2000, the INS initiated removal proceedings against Roberson. Exh. 3 (Notice to Appear). The INS charged Roberson with being removable under 8 U.S.C. §1227(a)(2)(A)(iii), (a)(2)(B)(i), based on his criminal conviction. Exh. 3.

On December 21, 2000, an immigration judge found that Roberson was removable and ordered his deportation. The immigration judge also found that Roberson was eligible for relief from removal under section 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §1231(b). Exh. 4 (Oral Decision of Immigration Judge). Further, the immigration judge held that Roberson's deportation be withheld under Article 3 of the Convention Against Torture. Exh. 4.

INS has appealed this decision to the BIA on December 21, 2000. Exh. 5 (Notice of Appeal to the Board of Immigration Appeals of Decision of Immigration Judge). Said appeal is pending.

2

## Question Presented

In that the Supreme Court has held that detention is part of the deportation process, in that deportation is a plenary power exercised by Congress and the executive branch, in that detention rationally furthers a number of legitimate government interests, and in that an alien's detention during removal proceedings is not indefinite, is the mandatory detention provisions of 8 U.S.C. §1226(c) governing criminal aliens constitutional?

## Argument

**IN THAT THE SUPREME COURT HAS HELD THAT DETENTION IS PART OF THE DEPORTATION PROCESS, IN THAT DEPORTATION IS A PLENARY POWER EXERCISED BY CONGRESS AND THE EXECUTIVE BRANCH, IN THAT DETENTION RATIONALLY FURTHERS A NUMBER OF LEGITIMATE GOVERNMENT INTERESTS, AND IN THAT DETENTION DURING REMOVAL PROCEEDINGS IS NOT INDEFINITE, THE MANDATORY DETENTION PROVISIONS OF 8 U.S.C. §1226(C) GOVERNING CRIMINAL ALIENS ARE CONSTITUTIONAL AND DO NOT VIOLATE DUE PROCESS.**

The Seventh Circuit in *Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999), is the only appellate court to consider the constitutionality of mandatory detention pending proceedings for criminal aliens under section 236(c) of the INA, 8 U.S.C. §1226(c). In reviewing the governing law, the Seventh Circuit upheld the constitutionality of §1226(c), observing that an alien in the United States who has violated our country's criminal laws has "forfeited any legal entitlement to remain in the United States and had little hope of clemency." 172 F.3d at 958. *See also Richardson v. Reno*, 162 F.3d 1338, 1364 n.119 (11th Cir. 1998), *vacated on other grounds*, 119 S. Ct. 2016 (1999)("Congress acts

3

well within its plenary power in mandating detention of a criminal alien with an aggravated felony conviction facing removal proceedings, ... [with this posing] no constitutional issue").

The Third Circuit Court of Appeals has not addressed this issue yet. However, district courts in the Middle District of Pennsylvania and elsewhere in the United States have issued rulings disagreeing on the constitutionality of mandatory detention during the removal process. *Compare Lezcano v. Reno*, 2000 WL 1175564, *3-6, 7 (N.D. Ca. Aug. 4, 2000)(attached)(upholding constitutionality of §1226(c); *Kahn v. Perryman*, 2000 WL 1053962 (N.D. Ill. July 31, 2000)(attached); *Avramenkov v. INS*, 99 F.Supp.2d 210, 215-19 (D. Conn. 2000); *Okeke v. Pasquarell*, 80 F.Supp.2d 635, 637-38 (W.D. Tex. Jan. 11, 1999); *Reyes v. Underdown*, 73 F.Supp.2d 653, 657-58 (W.D. La. Nov. 3, 1999); *Sierra-Tapia v. Reno*, 1999 WL 803898, *4-8 (S.D. Cal. Sept. 30, 1999)(attached); *Alikhani v. Fasano*, 70 F.Supp.2d 1124 (S.D. Cal. July 19, 1999); *Hinojosa-Perez v. Eddy*, 55 F.Supp.2d 1001 (D. Alaska 1999); *Edwards v. Blackman*, 48 F.Supp.2d 477, 480 (M.D. Pa. 1999)(McClure, J.), *vacated on other grounds*; *Galvez v. Lewis*, 56 F. Supp.2d 637 (E.D. Va. 1999); *Diaz-Zaldierna v. Fasano*, 43 F. Supp. 2d 1114 (S.D. Cal. 1999), *with Koita v. Reno*, 113 F.Supp.2d 737 (M.D.Pa. 2000)(Caldwell, J.).

Section 1226(c) was enacted by Congress to detain potentially dangerous aliens and aliens who are flight risks. We believe that those courts that have found this provision to be

unconstitutional have failed to recognize Congress' plenary powers in governing immigration -- powers that are far greater than its powers concerning citizens. Accordingly, we set forth these long-recognized legal principles.

A.   **The Removal Process and Mandatory Detention**

Mandatory detention cannot be viewed in a vacuum. Rather, detaining criminal aliens is but part of a removal process, not an end result. Section 1226(c) is but one of several pieces of legislation collectively designed to accelerate the removal process for criminal aliens.

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) to establish a framework to effect a net increase in removal orders entered against criminal aliens. Through IIRIRA's provisions, Congress not only mandated the detention of criminals pending removal proceedings, but also took away the Attorney General's discretionary authority to forgo the removal of aggravated felons, eliminated judicial review, and set a 90-day time limit by way of instruction to INS for physical removal after a final order is entered. See 8 U.S.C. §§1101(f)(3) and (8), 1158(b)(2)(B), 1226(c) and (e), 1229b(a)(3), (b)(1)(B), (C), (2)(C), (D), 1229c(a)(1), 1231(a), (b)(1)(A), (C), 1231(a)(2), 1252(a)(2)(C).

5

In enacting these provisions, Congress recognized that the curtailment of individual liberty interests was necessary to effect a net increase in removal orders against criminal aliens. That is, while the IIRIRA demands the detention of all criminal aliens from start to finish of the administrative removal process without an individual assessment on dangerousness and flight risk, it does so based on the theory that such limitation is necessary to ensure a more effective and credible removal process generally. *See* H.R. Rep. No. 104-469(I) (1996), *available in* 1996 WL 168955; 142 Cong. Rec. S3329, 1996 WL 174902 (daily ed. Apr. 15, 1996)(statement of Sen. Abraham)("These provisions <u>collectively</u> will allow us to dramatically increase the number of criminal aliens who are deported.")(emphasis added).

**B.    The Plenary Power Doctrine for All Immigration Matters**

The principle of judicial deference to legislative choices is magnified in the immigration context. *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977). *Fiallo*'s deferential approach to questions of immigration and nationality is tied to Congress' constitutional authority and inherent sovereign powers. Because the responsibility for formulating immigration policies is "exclusively entrusted to the political branches of government," such policy choices are "largely immune from judicial inquiry or

6

interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-589 (1952).

This basis for judicial caution applies with equal force in the immigration detention context. The power to detain is part and parcel of the power to remove; otherwise, "[p]roceedings to exclude or expel would be vain." *Wong Wing v. United States*, 163 U.S. 228, 234 (1896). *See also Carlson v. Landon*, 342 U.S. 524, 538 (1952)("Detention is necessarily a part of this deportation procedure. Otherwise, aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings.").

It is decidedly the province of the legislature to weigh and balance the costs of the immigration detention policy with the enforcement interests and the alien's liberty interests. The plenary power doctrine constrains judicial inquiry into Congress' balancing of individual and government interests, and the courts must accord great deference to Congress' determination of what process is due. *See Weiss v. United States*, 510 U.S. 163, 176-77 (1994).

This is a critical aspect of the plenary power doctrine. The courts should not revisit the wisdom of either Congress' desire to effect a systemic change or to curtail the liberty interests of criminal aliens pending proceedings. The very fact that Congress enacted the statute demonstrates that it concluded that other

7

policy concerns outweighed those concerns articulated by the critics.

The INS does not dispute that §1226(c) is subject to some level of substantive due process review.[1] *See Fiallo v. Bell*, 430 U.S. 787, 793 n.5 (1977). Because of the "plenary powers" doctrine, however, the proper standard of review here is a deferential rational-relation standard, under which §1226(c) is constitutional so long as it is "rationally" related to a "legitimate" government interest. *See Reno v. Flores*, 507 U.S. 292, 300-301, 305-306 (1993)(regulation limiting the release of juvenile aliens upheld, noting that Congress can enact rules governing aliens that would be unacceptable for citizens as long as the rule is rationally related to a legitimate government interest); *Carlson v. Landon*, 342 U.S. 524, 540-41 (1952)(upholding INS detention that was not clearly "without reasonable foundation").

C. **The Individual's Right To Liberty**

The characterization of the liberty interest at stake is another important aspect of the detention litigation. Courts are

---

[1] In §1226(c) cases, the administrative agency has the jurisdiction, pursuant to 8 C.F.R. §3.19(h)(2)(ii), to determine whether the alien in custody actually falls within a category of criminal aliens subject to interlocutory detention pending removal proceedings. *See Matter of Joseph*, Int. Dec. 3398, 1999 WL 339053 (BIA 1999). If the alien does fall within the interlocutory detention provision, then there is no authority to entertain a request for release on bond (unless the alien is eligible for Witness Protection Program benefits). *Id.*

8

required to adhere to the prudent course of looking to the concrete facts of a case to determine what right is at issue. *See Washington v. Glucksberg*, 521 U.S. 702, 722-24 (1997).

Moreover, we emphasize that an individual's rights to liberty pending criminal trial and pending removal proceedings are not comparable. Deportation proceedings are civil proceedings and, therefore, the various protections that apply in criminal trials do not apply in deportation hearings. *Immigration and Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 1038-39 (1984). "A person arrested on a preliminary warrant [of deportation] is not protected by the presumption of citizenship comparable to the presumption of innocence in a criminal case." *Id.*, 468 U.S. at 1043. The absence of a presumption of innocence affects the constitutionality of immigration detention because the motivating concern for limiting the length of pretrial detention in a criminal case is that presumption of innocence.

The interest of the alien at stake in §1226(c) cases is a non-fundamental interest in being released pending proceedings, not in an individualized hearing on the question of whether he will be released. As the Second, Fifth, and Seventh Circuit Courts have recognized, a deportable alien does not possess the same "liberty" as a citizen. *Parra*, 172 F.3d at 958; *Doherty v. Thornburgh*, 943 F.2d 204, 209-10 (2nd Cir. 1991).

9

In a certain sense, deportable criminal aliens in removal proceedings possess no "right to come and go at will." *See Flores*, 507 U.S. at 302. The reason is two-fold: (1) release on bond has always been a privilege and never a matter of right or entitlement; and (2) aliens are subject to the will of Congress when it comes to matters associated with their continued presence within our society. *See Flores*, 507 U.S. at 305-06; *Harisiades*, 342 U.S. at 586-87.

Consequently, although a criminal alien's physical freedom is being infringed temporarily during his removal proceedings, he has not been unlawfully deprived of any "fundamental liberty interest" in the constitutional sense. *See Parra*, 172 F.3d at 958; *see also Flores*, 507 U.S. at 306, *Carlson*, 342 U.S. at 537, 540-41; *Doherty*, 943 F.2d at 208-11. As the Seventh Circuit has explained, the private interest implicated by §1226(c)'s detention requirement "is not liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country." *Parra*, 172 F.3d at 958. Because §1226(c) does not implicate a fundamental right, the scope of review is rational basis review. *See Flores*, 507 U.S. at 306.

D.  **Section 1226(c) is Constitutional**

Section 1226(c) is a reasonable exercise of congressional power as it clearly furthers a legitimate governmental purpose.

10

The legislative history reveals that there were several legitimate purposes underlying §1226(c): (1) to prevent criminal aliens from absconding so they could be removed as required by law; (2) to protect public safety from the presence of potentially dangerous criminal aliens; (3) to correct the failure of prior bond proceedings where criminal aliens absconded; and (4) to repair the serious damage to the American immigration system caused by the Government's inability to detain criminal aliens pending deportation and to remove them promptly. *See* S. Rep. No. 48, 104th Cong., 1st Sess. (1995)(1995 WL 170285)(Leg. Hist.) at 1-6, 9, 18-23).

The statute seeks to prevent clearly deportable criminal aliens with no realistic hope of relief from removal from absconding or committing further criminal acts during proceedings to effect their removal. Preventing danger to the community and flight have long been considered legitimate regulatory goals. *See, e.g., Salerno*, 481 U.S. at 748-49; *Schall v. Martin*, 467 U.S. 253, 251 (1984); *Bell v. Wolfish*, 441 U.S. 520 (1979); *Carlson*, 342 U.S. at 534. These goals have been paramount among the immigration enforcement concerns of Congress and the Attorney General over the past decade, with mounting emphasis in the past three years as the problems of widespread recidivism and abscondment have come increasingly to light.

The United States Supreme Court has recently decided a case involving the rights of detained aliens. *Zadvydas v. Davis*, __ U.S. __ (2001), 2001 WL 720662 (June 28, 2001) (*Davis*). The present case presents a different statute and materially different facts.

In *Davis*, the Supreme Court held that 8 U.S.C. § 1231(a)(6), which allows for the detention of aliens beyond the removal period, contained an implicit "reasonable time" limitation, the application of which was subject to federal court review. *Davis*, 2001 WL 720662 at *3. The Court distinguished the statute in the present case (8 U.S.C. § 1226(c)) from the statute in question in Davis (8 U.S.C. § 1231) in that § 1226(c) had a termination point and that § 1231 did not have a termination point. Davis, 2001 WL 720662 at *13.

Unlike the statute at issue in *Davis*, the statute in the present case clearly indicates congressional intent to grant the Attorney General the authority to indefinitely confine an alien that is found deportable by reason of being an aggravated felon. Section 1226(c) states that the Attorney General "shall take into custody any alien ..." and allows the release of an alien described in the statute "only if" the alien is part of the witness protection program. 8 U.S.C. § 1226(c); Parra, 172 F.3d at 956. Unlike § 1231, which uses the term "may", allowing discretion by the Attorney General in making his or her

12

determination of release, Section 1226 mandates detention and specifically states when release may take place.

Additionally, unlike *Davis*, there is no suggestion that there is no significant likelihood of removal of the instant aliens in the reasonably foreseeable future because there is no indication that Roberson cannot be removed to a country other than Haiti. Further, as found by the *Davis* Court, aliens held pursuant to § 1226 have a foreseeable detention termination point, and aliens held pursuant to § 1231 do not. Accordingly, *Davis* does not control the present case.

There can be no question that removing deportable criminal aliens from the United States, and preventing them from absconding or committing further crimes in the process, are legitimate and reasonable goals. *See, e.g., Salerno*, 481 U.S. at 747; *Bell v. Wolfish*, 441 U.S. 520. Nor is there any doubt that the detention requirement rationally advances these objectives, or that a rational relationship exists between the "aggravated felon" classification and danger to the community and flight risk. Hence, §1226(c)(2) rests on a legitimate basis, and petitioner's substantive due process challenge must fail. *See Flores*, 507 U.S. at 306; *Fiallo*, 430 U.S. at 794-95; *Avramenkov*, 99 F.Supp.2d at 215-18.

Section 1226(c) also does not violate petitioner's procedural due process rights. In assessing the legitimacy of

13

any procedural due process claim, great judicial deference should be given to Congress' determination of what process is due. *See Weiss*, 510 U.S. at 176-77. The due process analysis set out in *Mathews v. Eldridge*, 424 U.S. 319, (1976), requires the court "to evaluate the private interest, the probability of error (and the effect of additional safeguards on the rate of error), and the government's interest in dispensing with those safeguards, with a thumb on the scale in favor of the statute's constitutionality." *Parra*, 172 F.3d at 957 (emphasis added).

As noted above, criminal aliens covered by §1226(c) do not have any constitutional "right" or "liberty interest" in avoiding detention pending removal proceedings because, by virtue of their criminal conduct and convictions, they have "forfeited any legal entitlement to remain in the United States." *See Parra*, 172 F.3d at 958. Consequently, "[t]he private interest here is not liberty in the abstract, but [merely] liberty in the United States by someone who is no longer entitled to remain in this country." *Id.*

The *Parra* court's reasoning applies in this case. Because petitioner was properly in the INS' jurisdiction and did not dispute the material facts underlying the criminal removal charges, the Court should significantly reduce the weight accorded his private interests in evaluating the due process claim. *Parra*, 172 F.3d at 958.

14

## Conclusion

For the above-stated reasons, petitioner's detention pursuant to 8 U.S.C. §1226(c) is constitutional under a rational basis test and the habeas petition should be denied.

    Respectfully submitted,

    MARTIN C. CARLSON
    United States Attorney


    */s/ Mark E. Morrison*
    MARK E. MORRISON
    Assistant United States Attorney
    228 Walnut Street, 2nd Floor
    P.O. Box 11754
    Harrisburg, PA  17108-1754
    717/221-4482

Date: July 30, 2001

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAUL ROBERSON, :
    Petitioner : No. 1:CV-01-1235
     :
    v. : (Judge Rambo)
     :
IMMIGRATION & NATURALIZATION :
SERVICE, :
    Respondent :

### CERTIFICATE OF SERVICE

    The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

    That on this 30th day of July, 2001, she served a copy of the attached

**RESPONSE TO HABEAS CORPUS PETITION**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the places and addresses stated below, which is the last known addresses, and by depositing said envelope and contents in the United States Mail in Harrisburg, Pennsylvania.

Addressee:

Paul Roberson
  A41-583-833
  59886
York County Prison
3400 Concord Road
York, PA 17402

                                   *Rebecca A. Plesic*
                                   REBECCA A. PLESIC
                                   Legal Secretary
                                   United States Attorney's Office

Dated: July 30, 2001